IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Carl Jack, Jr.,<br><br>            Petitioner,<br><br>v.<br><br>Charles L Ryan, et. al.,<br><br>           Respondents. | **CV-15-1598-PHX-PGR (MHB)**<br><br>**REPORT AND RECOMMENDATION** |

Petitioner William Carl Jack, Jr., who is confined in the Arizona State Prison Complex, Cimarron Unit, Tucson, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus ("habeas petition) pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer, (Doc. 16), and despite being given the opportunity to do so, Petitioner did not file a Reply. Petitioner lists four grounds for relief in his habeas petition: (1) trial counsel was ineffective by not filing a motion to suppress or a motion challenging the indictment, by not communicating with Petitioner, and by coercing him into signing the plea agreement, (2) there was insufficient evidence to convict Petitioner and that he is innocent, (3) Petitioner was not identified as a suspect in the burglary, and (4) Petitioner's mental health history was never presented in mitigation. (Doc. 1 at 6-9.) Petitioner requests that this Court grant him a reduction of two years off his 7- year sentence. (Id.) Respondents assert that all of Petitioner's claims are procedurally defaulted without excuse, and that all but claim one of Petitioner's habeas petition were waived by Petitioner's guilty plea.

# BACKGROUND[1]

On October 4, 2013, Petitioner was indicted on one count of first-degree burglary, two counts of armed robbery, and two counts of kidnapping. (Exh. B at 1.) The facts, as outlined in the presentence investigation report, are set forth below:

> On September 29, 2013, at 7:00 p.m., police responded to an emergency call of a home invasion in a west Phoenix apartment. A call was made to 911 Emergency by an eight-year-old boy who was hiding in his grandmother's room with his four-year-old sister. He reported that some men broke into their apartment and were hitting his father in the face with a gun. Officers arrived and spoke with victims [DM] and his grandmother, [LM], who were both injured. They indicated that Tytwin Tye ([defendant number] 001), a man the defendant [sic] knew as an acquaintance, kicked in the front door and entered their apartment with a gun. Tye began pistol-whipping [DM] in the head and face and demanding money. [DM] gave him $300.00 in cash from his pocket and told him he had some marijuana in his home. Tye forced him into his bedroom and took the marijuana. He then pistol-whipped him in the face, causing substantial injury.
>
> During the incident, [KM] walked down the hallway carrying [DW]'s one-month-old baby. Tye then hit her in the face with the gun, knocking her to the ground while she was still holding the baby. She was unable to get up from the floor and continued holding the baby. [DW]'s eight-year-old son and four-year-old daughter were hiding behind their grandmother's couch and his son was able to call for help. He left the cell phone on after calling 911 and was able to escape that apartment through a side door, where he called the police again from a neighbor's apartment. Meanwhile, Tye made [DW] disconnect his television and game system. Tye then handed the items out the front door to a second suspect, later determined to be [Petitioner], his cousin who lived in a neighboring apartment. Tye then fled the apartment and entered the passenger side of a vehicle driven by [Petitioner] The vehicle's lights were off and the defendants attempted to drive around arriving patrol cars to leave the parking lot, but the officers blocked the vehicle in. Tye fled the car and officers apprehended him after a brief foot pursuit. [Petitioner] stayed in the vehicle and was arrested without incident. Officers observed a chrome revolver in the front passenger seat, a bag of marijuana on the floorboard, and a large television belonging to [DW] in the back seat. A cell phone belonging to [Petitioner] was found containing pictures of marijuana, money, and [Petitioner] holding a revolver, and text messages describing drug and prostitution transactions. In a police interview [Petitioner] also admitted to selling marijuana himself. Mr. Tye denied any involvement in the incident and urinated on the table in the police interview room. Both defendants were found to be prohibited possessors [of firearms] due to prior felony convictions.

(Exh. Z at 1-2.)

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 16 – Respondents' Answer.

On November 18, 2013, the state filed an Allegation of Aggravating Circumstances, pursuant to A.R.S. § 13-701, alleging the crime involved: (1) the use or possession of a deadly weapon, (2) the presence of an accomplice, (3) the offense was committed for financial gain, (4) emotional or financial harm to the victim, (5) a victim over the age of 65 or disabled, and (6) a previous felony conviction within 10 years of the charged offence. (Exh. D.)

The government offered a plea agreement which required Petitioner to plead guilty to one count of burglary in the first degree, with a stipulated sentence of 7-years' imprisonment. (Exh. Q at 1.) In exchange, the government would: (1) dismiss the remaining four counts, (2) dismiss the allegation of historical priors, and (3) not file misconduct involving weapons charges. (Id. at 2.) Without the plea agreement, if Petitioner had been convicted at trial on all charges, he would have been facing between seven and forty-two years' imprisonment. (Exh. R at 3-4.)

On March 31, 2014, Petitioner appeared at the final pretrial hearing prepared to proceed to trial. (Exh. R at 2.) Petitioner wanted a trial despite having previously attended settlement conferences, been informed of the evidence against him and the consequence if convicted on all counts, and been apprised of the plea agreement option. (Id. at 4-5.) However, during discussion with the Court, Petitioner decided to accept the plea agreement. (Id. at 5-7.) Petitioner had a brief conference with counsel, was given additional explanation by the court of the nature and consequences of his plea agreement, pled guilty, and was found by the court to have knowingly, intelligently, and voluntarily entered his plea. (Id. at 7-12.) The court accepted Petitioner's guilty plea and scheduled sentencing for April 30, 2014. (Id. at 12.)

On April 10, 2014, Petitioner submitted a letter requesting a withdrawal of his guilty plea due to ineffective counsel. (Exh. T.) Petitioner's counsel requested a hearing regarding the voluntariness of the plea and asked the court to consider appointing new counsel to investigate whether counsel was ineffective. (Exhs. V, W.) The trial court permitted Petitioner's counsel to withdraw and appointed new counsel. (Exh. X.) On May

29, 2014, the trial court, having reviewed the record, denied Petitioner's motion to withdraw from his guilty plea, and sentenced Petitioner to a 7-year term of imprisonment. (Exh. BB.)

Thereafter, Petitioner initiated Rule 32 proceedings by filing a form Notice of Post-Conviction Relief indicating a claim of ineffective assistance of counsel during the guilty-plea proceeding and requesting post-conviction relief (PCR) counsel be appointed. (Exh. FF.) Counsel was appointed, but concluded there was no basis for post-conviction relief. (Exh. HH.) Counsel filed a Notice of Completion and requested an extension of time for Petitioner to file a *pro per* PCR petition. (Id.) Upon receipt of the notice, the trial court extended the *pro per* PCR petition filing date to December 19, 2014. (Exh. II.)

On January 15, 2015, the trial court dismissed the proceedings because no *pro per* PCR petition had been filed and no extension of the deadline had been requested. (Exh. KK.) Petitioner did not appeal the dismissal.[2]

On August, 14, 2015, Petitioner filed the instant habeas petition.

**STANDARD**

"An application for a writ of habeas corpus on behalf of a [state prisoner] . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254 (1996); see, e.g., Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Peterson v. Lampert, 319 F.3d 1153, 1155-156 (9th Cir. 2003) ("A petitioner must exhaust his state remedies by reaching the point where he has no state remedies available to him at the time he files his federal habeas petition."). Exhaustion provides the state "one full opportunity to resolve any constitutional issues" before a petition can be made to the federal court. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("This rule of comity [utilizing exhaustion] reduces friction between the state and federal court systems."); see also Peterson, 319 F.3d at 1159 ("The exhaustion

---

[2] Petitioner in his habeas petition indicates that the PCR proceedings were appealed to the Arizona court of Appeals. (Doc. 1 at 5.) However, there is no record of any state court proceedings following the January 15, 2015 dismissal. (Doc. 16 at 5, fn 2.)

- 4 -

requirement is designed to serve the purposes of federalism, and the efficient administration of justice.").

To properly exhaust state remedies in Arizona, a petitioner must fairly present his exact claims to the Arizona Court of Appeals through direct appeal or appropriate PCR proceeding. See Castillo v. McFadden, 399 F.3d 993, 999-1000 (9th Cir. 2005) (A claim must be fairly presented to "the Arizona Court of Appeals . . . [by presenting] both the operative facts and the federal legal theory on which his claim is based.") (citation omitted); see also Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999) ("[I]n cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."). Therefore, an Arizona petitioner must fairly present a PCR claim in post-conviction proceedings and to the Arizona Court of Appeals to exhaust the claim and permit review in habeas proceedings.

Like exhaustion, the procedural default doctrine ensures the states have an opportunity to address any constitutional issues. It prevents a party who has procedurally defaulted a claim from taking the defaulted claim to federal court. See Coleman, 501 U.S. at 730-32. "The doctrine applies . . . when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." Id. at 730. "If a state court determines that a claim is procedurally barred, [federal courts] are precluded from reviewing the merits of the claim [when] the procedural bar is adequate[3] and independent[4]." Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).

There are two types of procedural bars: implied and express[5]. See Robinson v. Schriro, 595 F.3d 1086, 1100 (9th Cir. 2010). An implied procedural bar "occurs when

---

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

[4] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[5] Express procedural bars are not relevant to the instant case and are not discussed herein.

- 5 -

the petitioner has failed to fairly present his claims to the highest state court and would now be barred by a state procedural rule from doing so." Id. Arizona Rules of Criminal Procedure provides deadlines for filing PCR petitions. See Ariz. R. Crim. P. 32.4(c)(2). Failing to timely file a petition creates a time bar[6]; a time barred PCR action is futile. Beaty, 303 F.3d at 987.

A procedurally defaulted claim may be considered by the federal courts if a petitioner can demonstrate: (1) a fundamental miscarriage of justice, or (2) cause for the defaults and actual prejudice resulting from them. See Schlup v. Delo, 513 U.S. 298, 314-15 (1995); see also Beaty, 303 F.3d at 987. The fundamental miscarriage of justice exception occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Murray v. Carrier, 477 U.S. 478, 496 (1986). In order for a petitioner to demonstrate cause for default, he must show an "objective factor external to the defense impeded efforts to comply with the State's procedural rule." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (quoting Murray, 477 U.S. at 488). A "petitioner demonstrates prejudice by establishing that the constitutional errors 'worked to his actual and substantial disadvantage.'" Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir. 2012) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Cause for procedural default may be established by "inadequate assistance of counsel at [the PCR proceedings] . . . for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). "To establish 'cause' to overcome procedural default under *Martinez,* a petitioner must show: (1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review

---

[6] Although exceptions to the time bar are found in Ariz. R. Crim. P. 32.1 (d), (e), (f), (g), and (h), none of the exceptions are claimed by Petitioner or apply here.

- 6 -

collateral proceeding." Dickens v. Ryan, 740 F.3d 1302, 1319 (9th Cir. 2014) (*en banc*) (citing Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013)).

In raising an ineffective assistance of counsel claim, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 669 (1984). Against this presumption, in the context of a claim of ineffective assistance of counsel in a guilty plea proceeding, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) but-for counsel's errors Petitioner would have proceeded to trial and not plead guilty. See Hill v. Lockhart, 474 U.S. 52, 57-60 (1985) (applying Strickland standard to guilty-pleas). In judging counsel's performance, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669. This deference to counsel ensures only constitutionally deficient performance can be challenged. See McMann v. Richardson, 397 U.S. 759, 770 (1986) (providing inadequate legal advice is not grounds for attack unless it is unreasonable); see also Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) (finding gross mischaracterization combined with erroneous advice to be deficient).

**DISCUSSION**

Here, Petitioner's habeas claims were not exhausted. They were not fairly presented to the trial court in PCR proceedings and Petitioner did not appeal from the dismissal to the Arizona Court of Appeals. Petitioner's claims are also procedurally defaulted. The deadline for Petitioner to file his PCR petition was December 19, 2014, and when no petition was filed, the proceedings were dismissed on January 15, 2015. Thus, Petitioner is now procedurally barred from presenting his claims in a state court proceeding. Petitioner does not claim cause and prejudice, a fundamental miscarriage of justice, or raise a Martinez claim.

1    Even if Petitioner could show cause or a fundamental miscarriage of justice, his claims would fail because they were waived by his guilty plea. Petitioner agreed in his plea agreement to waive his right to appeal by initialing the appeal waiver paragraph in his plea agreement, and by affirming his agreement to the waiver during the change of plea proceeding. (Exhs. Q at 2; R at 11.)

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann[7].

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Despite Petitioner's claim of coercion, his plea agreement was entered voluntarily, intelligently, and knowingly. "It is well settled that a voluntary and intelligent plea of guilty . . . may not be collaterally attacked. . . [When] entered by one fully aware of the direct consequences . . . [it] must stand unless induced by threats . . . misrepresentation . . . or . . . [improper] promises." See Mabry v. Johnson, 467 U.S. 504, 508-09 (1984). Petitioner was informed of the agreement, its contents, and his options on multiple occasions. On the day he entered his guilty plea, his intention was to go to trial. Counsel: "Mr. Jack has . . . vacillated between positions, but today was pretty clear with me that he wants to go to trial, and he understands that he would face substantially more time if he loses at trial . . ." (Exh. R at 2.) However during discussion with the court, he changed his mind:

> The Court: "So each of those carries a sentence from 7 to 21 years, and these could run consecutive to each other conceivably?"
>
> Counsel: "Yes. He was advised of that, well now he has a look of confusion . . ."
>
> . . .

---

[7] The McMann standard was the right to effective assistance of counsel within the range of competence demanded of attorneys in criminal cases. McMann, 397 U.S. at, 770-71. The McMann standard has since evolved into the Strickland standard and is applied to guilty-plea agreements through Hill. See Hill v. Lockhart, 474 U.S. 52, 57-60 (1985).

- 8 -

      Defendant: "I didn't know that. I wasn't advised of that."

. . .

      The Court: "[I]f the jury finds you guilty of both those counts involving the individual victims, the Court could sentence you to consecutive sentences. That means you would have to serve the first sentence which could be from 7 to 21 years. And then . . . you would have to serve the second sentence . . . So conceivably you could be sentenced up to 42 years in prison."

. . .

      Defendant: "Yeah. I am willing to sign the plea bargain."
(Id. at 3-6.)

The court took a recess allowing Petitioner and counsel to go over the agreement again. (Id. at 7.) Counsel reported to the court that: "[Petitioner] was given a lot of information at the settlement conferences[, and] . . . Judge Bailey tried to give him in her opinion based on his involvement what she thought the range he would be looking at." (Id. at 4-5.) Petitioner responded: "I understand that. I fully understand it. I mean, we talked about it." (Id. at 7.) The court then explained the terms of the agreement to Petitioner, explained the rights given up in pleading guilty, and took care to ensure that Petitioner understood what he was doing. (Id. at 7-12.) Petitioner was specifically asked by the court if anyone had forced or threatened him to get him to enter his guilty plea and he responded "no sir." (Id. At 10.) The court found Petitioner's plea to have "been made knowingly, intelligently, and voluntarily." (Id. at 12.)

As to any claim that his counsel was ineffective in advising Petitioner about the plea agreement, or that counsel coerced him into the guilty plea (included in ground one of Petitioner's habeas petition), the record does not establish a reasonable probability that the guilty plea would not have been entered "but for counsel's unprofessional errors." Petitioner appeared at his final pretrial conference declaring his intent to proceed to trial. The record is clear that Petitioner was given all of the relevant information, and was given advice by his counsel. Petitioner changed his mind during the hearing, during a discussion with the court as to the potential sentence he faced if convicted at a trial. There is no evidence that Petitioner was coerced by counsel in deciding to change his plea to

guilty pursuant to a favorable plea agreement. There is no evidence that Petitioner would not have entered the plea agreement "but for counsel's unprofessional errors."

Petitioner's guilty plea was made knowingly, intelligently, and voluntarily with constitutionally effective counsel. Petitioner failed to exhaust his claims in state court and they are procedurally defaulted as he is foreclosed from asserting them now in state court. Petitioner does not demonstrate cause or a fundamental miscarriage of justice and therefore the court will recommend that Petitioner's habeas petition be denied and dismissed with prejudice.

## CONCLUSION

Having determined that Grounds One through Four were not fairly presented, not exhausted, and are procedurally defaulted, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed

seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

Dated this 29th day of June, 2016.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge